1   Robert A. Appleby (admitted *pro hac vice*)
    robert.appleby@kirkland.com
2   KIRKLAND & ELLIS LLP
    601 Lexington Avenue
3   New York, NY 10022-4675
    Telephone:  (212) 446-4800
4   Facsimile:  (212) 446-4900

5   Sarah E. Piepmeier (SBN 227094)
    Sarah.piepmeier@kirkland.com
6   KIRKLAND & ELLIS LLP
    555 California Street
7   San Francisco, CA 94104
    Telephone: (415) 439-1400
8   Facsimile: (415) 439-1500

9   Attorneys for Defendant
    *TIBCO Software Inc.*
10  *Additional counsel listed on signature page*

11
                    **UNITED STATES DISTRICT COURT**
12                **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
13

14  VASUDEVAN SOFTWARE, INC.,                Case No. 11-CV-06638-RS

15                      Plaintiff,           **TIBCO'S NOTICE OF MOTION AND**
                  v.                         **MOTION TO STRIKE PORTIONS**
16                                           **OF THE EXPERT REPORTS AND**
    TIBCO SOFTWARE INC.,                     **EXCLUDE CERTAIN TESTIMONY**
17                                           **OF DENNIS MCLEOD AND**
                        Defendant.           **ALFONSO CÁRDENAS**
18
                                             Date:  August 29, 2013
19                                           Time:  1:30 p.m.
                                             Courtroom:  3, 17th Floor
20                                           Judge:  The Honorable Richard Seeborg

21                                           **Redacted Public Version**

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

NOTICE OF MOTION .....................................................................................................1

STATEMENT OF RELIEF REQUESTED AND ISSUES TO BE DECIDED ..................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................2

I.      INTRODUCTION .................................................................................................2

II.     SUCCINCT STATEMENT OF RELEVANT FACTS .........................................2

     A.     The '864 Patent.........................................................................................2

     B.     The Court's Claim Construction ...............................................................3

     C.     Dr. McLeod And Dr. Cárdenas' Understanding Of "Disparate [] Databases".................................................................................................4

III.    APPLICABLE LAW .............................................................................................5

IV.    ARGUMENT .........................................................................................................6

     A.     Databases Are "Disparate" Under The Court's Construction If They Lack The Compatible Information Necessary To Enable Linking Of Data. ........................................................................................................6

          1.     Compatible Keys ..........................................................................6

          2.     Absence Of Compatible Keys.......................................................9

     B.     VSi's Experts Apply An Incorrect Understanding Of "Disparate [] Databases" Under The Court's Construction. ...........................................10

          1.     VSi's Experts' Understanding of "Disparate [] Databases" Include Databases That Are Disparate As Well As Databases That Are Not Disparate..............................................................11

          2.     It Is Improper For VSi's Experts To Reargue Claim Construction And Expand The Scope Of The '864 Patent.............15

V.     CONCLUSION....................................................................................................16

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Biogen Idec, Inc. v. GlaxoSmithKline LLC,*
   713 F.3d 1090 (Fed. Cir. 2013) ........................................................................................ 2

*Cordis Corp. v. Boston Scientific Corp.,*
   561 F.3d 1319 (Fed. Cir. 2009) ...................................................................................... 16

*Cordis Corp. v. Boston Scientific Corp.,*
   658 F.3d 1347 (Fed. Cir. 2011) ................................................................................. 5, 10

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ......................................................................................................... 5

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) ......................................................................................................... 5

*Liquid Dynamics Corp. v. Vaughan Co.,*
   449 F.3d 1209 (Fed. Cir. 2006) ................................................................................. 5, 10

*MarcTec, LLC v. Johnson & Johnson,*
   664 F.3d 907 (Fed. Cir. 2012) ...................................................................................... 15

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370 (1996) ......................................................................................................... 5

*Regents of the Univ. of California v. Micro Therapeutics, Inc.,*
   No. C 03-05669 JW, 2007 WL 2429412 (N.D. Cal. Aug. 23, 2007) ........................ 6, 10

**Statutes**

35 U.S.C. § 285 .................................................................................................................... 15

**Rules**

FED. R. EVID. 702 .................................................................................................................... 5

*— Emphasis Added Unless Otherwise Noted —*

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT
REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS
MCLEOD AND ALFONSO CÁRDENAS

ii

Case No. 11-CV-06638-RS

1

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2013 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Richard Seeborg at the United States District Court for the Northern District of California, San Francisco Division, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, the Court will hear TIBCO Software Inc.'s Motion to Strike Portions of the Expert Reports and Exclude Certain Testimony of Dennis McLeod and Alfonso Cárdenas.  This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the accompanying declaration of Joseph Loy and exhibits attached thereto; the reply papers that TIBCO may file in response to any opposition papers VSi may file; all pleadings and papers filed in this action; and upon such evidence and argument that may properly be presented at or before the hearing on this matter.


## STATEMENT OF RELIEF REQUESTED AND ISSUES TO BE DECIDED

TIBCO respectfully requests that the Court strike the portions of the Expert Report of Dr. Dennis McLeod Regarding Infringement of U.S. Patent No. 7,167,864, dated April 12, 2013, and the Expert Report of Dr. Alfonso Cárdenas Regarding Validity of U.S. Patent No. 7,167,864, dated May 3, 2013, that rely on any application of the claim term "disparate [] databases" that differs from the Court's construction.  TIBCO further requests that the Court exclude Dr. McLeod and Dr. Cárdenas from offering any testimony that relies on facts or opinions based on the erroneous construction of "disparate [] databases" that Dr. McLeod and Dr. Cárdenas asserted in their reports.

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS MCLEOD AND ALFONSO CÁRDENAS

1

Case No. 11-CV-06638-RS

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

To overcome prior art, Vasudevan Software, Inc. ("VSi") made unequivocal statements to the United States Patent and Trademark Office ("PTO") regarding the limited scope of its patents and the proper construction of the claim term "disparate [] databases."  The Court construed "disparate [] databases" in accordance with these statements, rejecting VSi's litigation-inspired attempt to expand the scope of U.S. Patent No. 7,167,864 ("the '864 patent").  Dissatisfied that the Court's construction of "disparate [] databases" does not coincide with its infringement arguments against TIBCO Software Inc. ("TIBCO"), VSi's experts apply an overbroad understanding of the Court's construction in an attempt to portray otherwise lawful conduct as acts of infringement of the '864 patent.  VSi's experts' understanding not only misapplies the Court's construction, but also seeks to reclaim subject matter explicitly disclaimed by the patentee during prosecution.  Unambiguous patentee statements and claim constructions cannot, however, be so easily disregarded.  Indeed, the Federal Circuit has held that "[p]rosecution history disclaimer plays an important role in the patent system. … Beyond the notice function and reliance-based aspects of a patent's prosecution history, it 'provides evidence of how the [PTO] and the inventor understood the patent.'"  *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013).

Because VSi's experts' opinions regarding the claim term "disparate [] databases" are unreliable, a misapplication of the Court's claim construction, and likely to confuse the jury, the Court should exercise its gate-keeping function and exclude these expert opinions as failing to meet the requirements for admissibility under the Federal Rules of Evidence and *Daubert*.

**II.      SUCCINCT STATEMENT OF RELEVANT FACTS**

**A.      The '864 Patent**

VSi holds the rights to four patents—U.S. Patent Nos. 6,877,006 ("the '006 patent"); 7,167,864 ("the '864 patent"); 7,720,861 ("the '861 patent"); and 8,082,268 ("the '268 patent")—all titled "Multimedia Inspection Database System (MIDaS) for Dynamic Run-Time Data Evaluation," all naming Mark Vasudevan as the alleged inventor, and all stemming from the same provisional application.  VSi's alleged inventions generally relate to methods and data storage media containing

instructions for retrieving data from "disparate [] databases" and dynamically assembling an online analytical processing ("OLAP") cube.  The '006, '864, and '861 patents all contain claims requiring the "disparate [] databases" limitation.

VSi filed suit against TIBCO and MicroStrategy Inc. ("Defendants") for patent infringement in December 2011.  (Dkt. No. 1, Compl.; Dkt. No. 1, Compl. (3:11-cv-06637-RS (N.D. Cal.)).)  VSi alleges that TIBCO infringes independent Claim 26 of the '864 patent, as well as dependent Claims 33, 36, 39, 41, 45, 46, 48 and 50 (collectively, the "asserted claims").  Each of these asserted claims requires that "a plurality of disparate digital databases" be accessed to retrieve data.

**B.     The Court's Claim Construction**

During the prosecution of the '006 patent, the PTO rejected all of the pending claims based on U.S. Patent No. 6,516,234 ("Jones").  (Ex. 1, VSI0000021-351 at VSI0000238-44.)  The PTO reasoned that Jones taught "accessing with a computer a plurality of *digital* databases," including where such databases "are incompatible to each other"—just as VSi's then-pending claims required.  (*Id.* at VSI0000239, 242.)  In response, VSi amended all of its independent claims to include the new limitation that the plurality of digital databases be "a plurality of *disparate* digital databases."  (*See, e.g.*, *id.* at VSI0000248.)   Along with this amendment, VSi explained how its invention was distinguishable from the prior art:

> ***The disparate nature of the above databases refers to the absence of compatible keys or record identifier (ID) columns of similar value or format in the schemas or structures of the database that would otherwise enable linking data within the constituent databases.***  An example of such a common key is a social security number that would enable linking or relational database "join operations" on an individual's personnel data with his or her insurance plans.  In embodiments of Applicant's invention, <u>such a common key value is not necessary</u>. This disparate nature extends, for example, to the type of database (e.g., Oracle, IBM DB2, Microsoft SQL Server or Object Databases) and the structure, schema, and nature of the databases (i.e., type of data fields in various tables of the constituent databases) … Further, the component databases in ***Jones et al. rely on common keys*** that relate the data between the different tables and databases.

(*Id.* at VSI0000265-66 (underlining in original).)  VSi relied on this definition again during the prosecution of the '861 patent to overcome additional prior art:

> According to Spielman, it is locally stored data … not the plurality of databases 10, which is used for presenting data.  Thus, Spielman does not disclose or even suggest, at a minimum, viewing or means to **view "the retrieved data** using [a] GUI, **wherein the retrieved data is accessed <u>dynamically on demand directly from the disparate digital databases</u>,"** as recited in each of claims 82-84.

(Ex. 2, VSI0011284-13192 at VSI0011495 (emphasis in original).)

On September 12, 2012, this Court held a joint claim construction hearing for the TIBCO and MicroStrategy litigations.  (Dkt. No. 101, Civil Minutes.)  One of the disputed claim terms was "disparate [] databases."  (Dkt. No. 81 at Ex. A, P.R. 4-3 Statement.)  VSi argued that "disparate [] databases" meant "incompatible databases having different schemas."  (Dkt. No. 93 at 6, VSi Claim Const. Br.)  Defendants proposed a narrower construction based on the statements made by VSi during the prosecution of its patents, contending that "disparate [] databases" meant "databases having an absence of compatible keys or record identifier (ID) columns of similar value or format in the schemas or structures of the database that would otherwise enable linking data within the constituent databases."  (Dkt. No. 96 at 5-6, Def. Claim Const. Br.)  In the alternative, VSi argued that if the Court adopted Defendants' construction, then "such a construction should be clear that the limitation is satisfied by databases manufactured by different companies that have different schemas (as opposed to Defendants' overly-narrow construction)."  (Dkt. No. 93 at 10.)

On September 19, 2012, this Court issued a joint claim construction order for the TIBCO and MicroStrategy litigations, construing "disparate [] databases" as used within the '864 patent in accordance with TIBCO and MicroStrategy's proposed construction.  (Dkt. No. 102 at 5-8, Order.)  Under the Court's construction, "disparate [] databases" means "databases having an absence of compatible keys or record identifier columns of similar value or format in the schemas or structures that would otherwise enable linking of data."  (*Id.* at 8.)  This construction was based on the statements made by VSi to the PTO, which the Court considered to be a clear "disavowal" and "unmistakable evidence of how VSi understood the scope of its claims."  (*Id.* ("[T]he PTO apparently relied on those representations in granting the '006 patent.").)  Furthermore, the Court noted that VSi's argument that any definition of "disparate [] databases" must include databases by different commercial vendors (Oracle, IBM, Microsoft, etc.) "is *not* necessarily inconsistent" with the Court's construction.  (*Id.* at 7 (emphasis in original).)

## C.    Dr. McLeod And Dr. Cárdenas' Understanding Of "Disparate [] Databases"

According to Dr. McLeod and Dr. Cárdenas, databases are "disparate" under the Court's construction if any of the following conditions exists:  **REDACTED**

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT
REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS
MCLEOD AND ALFONSO CÁRDENAS

4

Case No. 11-CV-06638-RS

**REDACTED**

. (Ex. 3, McLeod Report at ¶¶ 83, 86, 90; Ex. 4, McLeod Dep. Tr. at. 161:16-162:12; Ex. 5, Cárdenas Report at ¶ 126; Ex. 6, Cárdenas Dep. Tr. at 151:4-153:11, 156:9-21.) **REDACTED**

. (*See, e.g.*, Ex. 3, McLeod Report at ¶¶ 77-98; Ex. 4, McLeod Dep. Tr. at. 161:16-162:12.) **REDACTED**

**REDACTED**

. (*See, e.g.*, Ex. 5, Cárdenas Report at ¶ 126 **REDACTED**

**REDACTED**

## III. APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that such testimony (1) is based upon sufficient facts or data, (2) is the product of reliable principles and methods, and (3) applies the principles and methods reliably to the facts. *See* Fed. R. Evid. 702. The Supreme Court has made clear that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999).

"[T]he construction of a patent, including terms of art within its claims, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). It is well-settled that expert testimony based on a misapplication of a court's claim construction should be excluded. *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) ("[W]e must disregard the testimony of [the] expert ... because ... that testimony was based on an incorrect understanding of the claim construction."); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of expert opinion "as irrelevant because it was based on an impermissible claim construction"); *Regents of the Univ. of California v. Micro Therapeutics,*

*Inc.*, No. C 03-05669 JW, 2007 WL 2429412, at *3 (N.D. Cal. Aug. 23, 2007) (striking portions of plaintiff's expert's infringement report that did "not comply with the Court's construction of the phase 'predetermined time period'").

## IV.    ARGUMENT

### A.    Databases Are "Disparate" Under The Court's Construction If They Lack The Compatible Information Necessary To Enable Linking Of Data.

The Court construed "disparate [] databases" to mean "databases having an absence of compatible keys or record identifier columns of similar value or format in the schemas or structures that would otherwise enable linking of data."  (D.I. 102 at 8.)  This construction indicates that databases are "disparate" if they lack the compatible information necessary to enable linking of data within the databases.  Conversely, databases are not "disparate" under the Court's construction when there is a logical relationship between keys to enable linking.  Databases that **REDACTED** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *may or may not be "disparate [] databases" under the Court's construction*.  It is the presence or absence of compatible keys to enable linking—and not the mere existence of any of the three conditions VSi proposes—that defines whether databases are "disparate."

#### 1.    Compatible Keys

According to VSi during prosecution, the prior art Jones patent taught the use of compatible keys that link data in different tables and databases.  (Ex. 1, VSI0000021-351 at 266.)  Whether keys are compatible in this sense depends on the ability to match the information of the key in one database or table to the key in another database or table.  Minor formatting distinctions, such as data format and column headings, are not relevant to determining whether compatible keys exist.  (Ex. 7, Whitehorn Report at ¶ 99.)

During prosecution, VSi stated that an example of a compatible key would be "a social security number that would enable linking or relational database 'join operations' on an individual's personnel data with his or her insurance plans." (Ex. 1, VSI0000021-351 at 265.)  As shown below, because both the Personnel Information database and the Insurance Information database contain

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT
REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS
MCLEOD AND ALFONSO CÁRDENAS

6

Case No. 11-CV-06638-RS

columns with social security information, the social security information will form a common key and enable the linking of information from the two databases:

**First Database of**
**Personnel Information**

| SSN | Salary | Office |
|---|---|---|
| 123456789 | 30000 | New York |
| 234567890 | 35000 | Chicago |
| 345678901 | 25000 | San Francisco |
| 456789012 | 50000 | New York |
| 567890123 | 35000 | San Francisco |

**Second Database of**
**Insurance Information**

| SSN | DOB | Plan |
|---|---|---|
| 123456789 | 1/1/1911 | HMO |
| 234567890 | 2/2/1922 | HMO |
| 345678901 | 3/3/1933 | PPO |
| 456789012 | 4/4/1944 | PPO |
| 567890123 | 5/5/1955 | HMO |

**Resulting Database After Linking Data with Compatible Keys**

| SSN | Salary | Office | DOB | Plan |
|---|---|---|---|---|
| 123456789 | 30000 | New York | 1/1/1911 | HMO |
| 234567890 | 35000 | Chicago | 2/2/1922 | HMO |
| 345678901 | 25000 | San Francisco | 3/3/1933 | PPO |
| 456789012 | 50000 | New York | 4/4/1944 | PPO |
| 567890123 | 35000 | San Francisco | 5/5/1955 | HMO |

(Ex. 7, Whitehorn Report at ¶ 100.)  Under the Court's construction, the Personnel Information database and the Insurance Information database would not be "disparate" because they share a "compatible key," *i.e.* the social security number, which enables linking of data.  (Ex. 7, Whitehorn Report at ¶ 100.)

As mentioned above, databases can have "compatible keys" even if REDACTED because it is the logical relationship between the database keys that determines their compatibility. REDACTED do not preclude the linking of data:

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS MCLEOD AND ALFONSO CÁRDENAS

Case No. 11-CV-06638-RS

**First Database of**
**Personnel Information**

| SSN | Salary | Office |
|---|---|---|
| 123456789 | 30000 | New York |
| 234567890 | 35000 | Chicago |
| 345678901 | 25000 | San Francisco |
| 456789012 | 50000 | New York |
| 567890123 | 35000 | San Francisco |

**Second Database of**
**Insurance Information**

| SSN | DOB | Plan |
|---|---|---|
| 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 | 1/1/1911 | HMO |
| 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 | 2/2/1922 | HMO |
| 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 | 3/3/1933 | PPO |
| 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 | 4/4/1944 | PPO |
| 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 | 5/5/1955 | HMO |

**Resulting Database After Linking Data with Compatible Keys**

| SSN | Salary | Office | DOB | Plan |
|---|---|---|---|---|
| 123456789 | 30000 | New York | 1/1/1911 | HMO |
| 234567890 | 35000 | Chicago | 2/2/1922 | HMO |
| 345678901 | 25000 | San Francisco | 3/3/1933 | PPO |
| 456789012 | 50000 | New York | 4/4/1944 | PPO |
| 567890123 | 35000 | San Francisco | 5/5/1955 | HMO |

(Ex. 7, Whitehorn Report at ¶ 101.) ████████ REDACTED ████████

████████ can be linked once the data in each of the key columns is correlated.  As shown above, such correlation may occur by removing the hyphens in the social security number in the second database.  (Ex. 7, Whitehorn Report at ¶ 101.)  Similarly, the logical relationship between the primary keys in two databases exists ████████ REDACTED ████████:

**First Database of**
**Personnel Information**

| EmployeeID | Salary | Office |
|---|---|---|
| 123456789 | 30000 | New York |
| 234567890 | 35000 | Chicago |
| 345678901 | 25000 | San Francisco |
| 456789012 | 50000 | New York |
| 567890123 | 35000 | San Francisco |

**Second Database of**
**Insurance Information**

| SSN | DOB | Plan |
|---|---|---|
| 123456789 | 1/1/1911 | HMO |
| 234567890 | 2/2/1922 | HMO |
| 345678901 | 3/3/1933 | PPO |
| 456789012 | 4/4/1944 | PPO |
| 567890123 | 5/5/1955 | HMO |

**Resulting Database After Linking Data with Compatible Keys**

| Key | Salary | Office | DOB | Plan |
|---|---|---|---|---|
| 123456789 | 30000 | New York | 1/1/1911 | HMO |
| 234567890 | 35000 | Chicago | 2/2/1922 | HMO |
| 345678901 | 25000 | San Francisco | 3/3/1933 | PPO |
| 456789012 | 50000 | New York | 4/4/1944 | PPO |
| 567890123 | 35000 | San Francisco | 5/5/1955 | HMO |

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT
REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS
MCLEOD AND ALFONSO CÁRDENAS

8

Case No. 11-CV-06638-RS

(Ex. 7, Whitehorn Report at ¶ 102.)  Dr. Cárdenas confirmed this understanding, testifying that for databases that use social security numbers, the value of the social security number—rather than the column name—is the key that is the unique identifier used to locate particular records:

> Q:      So if we had a database with a column and a Social Security number and, say, it was called Social Security number column, ***the key in that example would be the Social Security number in each row for each record***?
> A:      The ***value in each row is the unique identifier***.  The value.
> Q:      And ***the value is each person's number***?
> A:      Correct.
>
> ***
>
> Q:      Do you agree that ***a database key allows a program to obtain direct access to a record***?
> A:      … That's one way of getting to a record.
>
> ***
>
> Q:      So I want you to give me an example where I give you the name of a column, let's say the name of the column is Social Security number; and just given that information alone, you could lead me to the record I was looking for?  Is that possible?
> A:      … [A]gain, as I said, the column name is not what would be enough to lead you to a particular row.  You get -- actually, the column name and then you have access to all the records for that particular row -- that particular column.  … ***I have never heard before the use of a column as a unique identifier to get a particular record.***  I have not heard such a term.  So usually we have a -- as unique identifier, the value of a particular cell and their given column.  That's what we consider the unique identifier. … ***Given the name of the column, you do not know which particular record, in essence, you're referring to because the name of the column refers to the set of values versus the domain.***

(Ex. 8, Cárdenas MSTR Dep. Tr. at 45:3-19, 47:20-48:1, 49:17-52:13 (objections omitted).)  Thus,

<span style="background-color:black;color:white;">REDACTED</span> do not necessarily preclude the linking of data through the databases' compatible keys.  (Ex. 7, Whitehorn Report at ¶ 102-03.)  As long as the keys contain the same information, as in the above examples, they are compatible and thus not "disparate" under the Court's construction.  (*Id.*)

### 2.      Absence Of Compatible Keys

On the other hand, not all databases have compatible keys, and thus are "disparate [] databases" under the Court's construction.  An example of "disparate [] databases" is shown below:

<table>
<thead>
<tr><th colspan="3">First Database of<br>Personnel Information</th><th></th><th colspan="3">Second Database of<br>Insurance Information</th></tr>
</thead>
</table>

| EmployeeID | Salary | Office | | SSN | DOB | Plan |
|---|---|---|---|---|---|---|
| 000000001 | 30000 | New York | | 123456789 | 1/1/1911 | HMO |
| 000000002 | 35000 | Chicago | | 234567890 | 2/2/1922 | HMO |
| 000000003 | 25000 | San Francisco | | 345678901 | 3/3/1933 | PPO |
| 000000004 | 50000 | New York | | 456789012 | 4/4/1944 | PPO |
| 000000005 | 35000 | San Francisco | | 567890123 | 5/5/1955 | HMO |

(Ex. 7, Whitehorn Report at ¶ 104.)  Here, the database of Personnel Information is organized by employee ID numbers, rather than social security numbers.  Because the "EmployeeID" field in the first database and the "SSN" field in the second database do not share a compatible key, they cannot be linked—even if the data in one of the fields is reformatted.  Instead, a separate joining table or other data processing is required to correlate this data to identify which EmployeeID correlates to which SSN.  If a user attempted to join these two tables without using a separate joining table or other data processing, the resulting data table would be nonsense because there would be no logical link among the information in the two databases.  (Ex. 7, Whitehorn Report at ¶ 104.)  Thus, databases, such as above, that do not share a compatible key to enable linking of data are "disparate [] databases" under the Court's construction.

**B.    VSi's Experts Apply An Incorrect Understanding Of "Disparate [] Databases" Under The Court's Construction.**

VSi's experts' understanding of the Court's construction of "disparate databases," and subsequent application thereof, is wrong as a matter of law and should be excluded.  *Cordis*, 658 F.3d at 1357 ("[W]e must disregard the testimony of [the] expert ... because ... that testimony was based on an incorrect understanding of the claim construction."); *Liquid Dynamics*, 449 F.3d at 1224 n.2 (affirming exclusion of expert opinion "as irrelevant because it was based on an impermissible claim construction"); *Micro Therapeutics*, 2007 WL 2429412, at *3 (striking portions of plaintiff's expert's infringement report that did "not comply with the Court's construction of the phase 'predetermined time period'").

1. **VSi's Experts' Understanding of "Disparate [] Databases" Include Databases That Are Disparate As Well As Databases That Are Not Disparate.**

Although databases *may* be "disparate" if ███ REDACTED ███

████████████████████████████████████████████████████

████████████████████—as claimed by VSi's experts, these conditions *do not cause* an absence

of compatible keys. ███████ REDACTED ████████████

████████████████████████████████████████████████████

████████████████████████████████. VSi's experts' improper

understandings of "disparate [] databases" are addressed in turn below.

    a.    **Databases That** ███████ REDACTED ██████

███ REDACTED ███ have no bearing on the existence or absence of "compatible keys or

record identifier columns of similar value or format in the schemas or structures that would

otherwise enable linking data."  As discussed above, databases that ███ REDACTED ████

███████ can have compatible keys because there are other primary keys in the databases, *i.e.* the

social security numbers themselves, that enable linking of the data.  (*Supra* IV.A.1.) ██REDACTED█

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

(*Id.* (red boxes added).)

Moreover, joining tables with different column names was a known prior art solution to those of ordinary skill in the art:

Q:   Are you aware of ***any art prior to the patents that would allow you to do a join where the key identifier column names were different***?

A:   ***Yes, there is a way in which you do a join in which the columns may be -- the column names may be different*** . . . So yes, I have two tables I have seen in real life.  One table is in Spanish, and another one table is in English.  They have the same table, but the column names are different because one is in Spanish; one is in English. So it is a join operator, a variation of the join operator.  ***Some vendors implement them; others do not, in which you say I want to join these two tables, even though the column names do not match.  That's a known solution***.

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT
REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS
MCLEOD AND ALFONSO CÁRDENAS

12

Case No. 11-CV-06638-RS

(Ex. 8, Cárdenas MSTR Dep. Tr. at 132:15-133:8.)  Therefore, although "disparate [] databases" under the Court's construction *may* ██████████ REDACTED ██████████ are not determinative of the disparate nature of the databases.

**b.  Databases** ██████ REDACTED ██████

█████████████ REDACTED █████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████ (Ex. 3, McLeod Report at ¶ 87; *see also id.* at ¶¶ 86-87 ██████████ REDACTED ██████████

████████████.)  While this might be true for some database systems, it is not true for all database systems.  Microsoft Access, for instance, is a database system that can natively open database files from other manufacturers.  (Ex. 7, Whitehorn Report at ¶ 109-110.)

Furthermore, the Court's Claim Construction Order makes clear that databases from different manufacturers may have compatible keys, or they may lack compatible keys:

> The trouble with VSi's position is that defendants' construction is *not* necessarily inconsistent with the distinction drawn between databases supplied by different vendors – as VSi's own statements to the PTO make quite clear.  Neither side suggests that different vendors' databases have identical record identifiers or formats within the structures or schemas organizing the data, and VSi's own proposed construction apparently preserves vendor-specific incompatibility by making reference to different [*sic*] "different schemas."

(Dkt. No. 102 at 7-8 (internal citations omitted; emphasis in original).) ██████ REDACTED ██████

█████████ Dr. Cárdenas conceded under oath that the database manufacturer is not determinative of whether the databases are "disparate" under the Court's construction.  (Ex. 8, Cárdenas MSTR Dep. Tr. at 113:3-114:3, 117:4-9 ("So, you know, generally if you have different vendors, generally the systems are not -- you know, are disparate and therefore they're disparate, they're incompatible.  ***But not necessarily so***. … So the key word here is disparate.  That's the key word.  Disparate, not in the sense that they're only different manufacturers; they're disparate because the data values and the data types are different.  That's the key.  That's a key element in this patent.").)  Thus, ██████ REDACTED ██████ does not dictate whether the databases share compatible keys or record identifiers sufficient to enable linking of data.

1    **c.**    **Databases** REDACTED

2    REDACTED

3

4

5

6

7

8

9

10

11

12  REDACTED

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REDACTED

(*Id.* at ¶ 92 (red boxes added).)  Therefore, REDACTED is instructive for determining whether databases are "disparate" under the Court's construction.

### 2. It Is Improper For VSi's Experts To Reargue Claim Construction And Expand The Scope Of The '864 Patent.

By applying an overbroad understanding of the Court's construction of "disparate []" databases," VSi's experts are attempting to negate the patentee's prosecution history disclaimer and align the Court's current construction with its rejected claim construction position.  Such an approach is improper, and has been condemned by the Federal Circuit.  In *MarcTec*, for example, the Federal Circuit affirmed the district court's grant of summary judgment of noninfringement and its finding the case exceptional under 35 U.S.C. § 285 because of the plaintiff and its expert's misapplication of the court's claim construction.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012).  The court in *MarcTec* construed the disputed claim term "bonded" to mean "bonded by the application of heat" based on statements made during the prosecution of the patent-in-suit to overcome prior art.  *Id.* at 911-13.  In its order granting summary judgment of noninfringement, the court excluded the plaintiff's expert's testimony regarding infringement of the "bonded" limitation because his testimony "ignored the court's claim construction."  *Id.* at 913-14 ("limitations clearly adopted by the applicant during prosecution are not subject to negation during litigation").  Similarly here, VSi's experts are attempting to negate through litigation the limitations adopted by VSi to overcome prior art during prosecution.

And to the extent VSi's experts dispute the Court's claim construction, "it is improper to argue claim construction to the jury because the risk of confusing the jury is high when experts opine

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT
REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS
MCLEOD AND ALFONSO CÁRDENAS

15

Case No. 11-CV-06638-RS

on claim construction." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (internal quotation marks and citation omitted).  The Court already rejected VSi's construction of "disparate [] databases" and it should not be allowed a second bite at the apple through its experts.

## V.      CONCLUSION

For the foregoing reasons, Defendant TIBCO respectfully requests that this Court strike the portions of Dr. McLeod and Dr. Cárdenas' expert reports that rely on any application of the claim term "disparate [] databases" that differs from the Court's construction, and preclude Dr. McLeod and Dr. Cárdenas from offering any testimony that relies on facts or opinions based on the erroneous construction "disparate [] databases."


Dated:  July 18, 2013                    Respectfully submitted,


By: /s/    *Joseph Loy*
Robert A. Appleby (admitted *pro hac vice*)
robert.appleby@kirkland.com
Joseph A. Loy (admitted *pro hac vice*)
joseph.loy@kirkland.com
Lauren B. Sabol (admitted *pro hac vice*)
lauren.sabol@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4675
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Ian J. Block (admitted *pro hac vice*)
ian.block@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

1      Sarah E. Piepmeier (SBN 227094)
       sarah.piepmeier@kirkland.com
2      KIRKLAND & ELLIS LLP
       555 California Street
3      San Francisco, CA 94104
       Telephone: (415) 439-1400
4      Facsimile: (415) 439-1500

5      Attorneys for Defendant
       TIBCO SOFTWARE INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2013, a true and correct copy of the foregoing

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS AND EXCLUDE

CERTAIN TESTIMONY OF DENNIS MCLEOD AND ALFONSO CÁRDENAS was lodged with

Court and served by e-mail delivery on counsel for the parties as follows:

**Counsel for Plaintiff VSi:**

Brooke A. M. Taylor (btaylor@susmangodfrey.com)
Jordan W. Connors (jconnors@susmangodfrey.com)
(cc: bnealious@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000

Stephen E. Morrissey (smorrissey@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029

Michael F. Heim (mheim@hpcllp.com)
Leslie V. Payne (lpayne@hpcllp.com)
Eric J. Enger (eenger@hpcllp.com)
HEIM, PAYNE & CHORUSH, LLP
600 Travis Street, Suite 6710
Houston, TX 77002-2912

/s/   *Joseph Loy*
Joseph A. Loy (admitted *pro hac vice*)
joseph.loy@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4675
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

TIBCO'S MOTION TO STRIKE PORTIONS OF THE EXPERT
REPORTS AND EXCLUDE CERTAIN TESTIMONY OF DENNIS
MCLEOD AND ALFONSO CÁRDENAS

Case No. 11-CV-06638-RS