United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VASUDEVAN SOFTWARE, INC., | No. 11-cv-06638 RS |
| Plaintiff, | |
| | **ORDER GRANTING SUMMARY JUDGMENT OF INVALIDITY** |
| v. | |
| TIBCO SOFTWARE, INC., | |
| Defendant. | |

## I.    INTRODUCTION

Defendant TIBCO Software, Inc. (TIBCO) brings three separate motions for summary judgment of invalidity in connection with U.S. Patent Number 7,167,864 (the '864 patent) held by plaintiff Vasudevan Software, Inc. (VSi).  VSi asserts that TIBCO's accused products infringe upon independent claim 26 of that patent, as well as claims 33, 36, 39, 41, 45, 46, 48 and 50 that are dependent upon it.[1]  First, TIBCO moves for summary judgment of invalidity contending that the alleged invention of the '864 patent is obvious under 35 U.S.C. § 103 and therefore not patentable. It has also moved for summary judgment of invalidity on the grounds that the access code features of the alleged invention fail to meet the written description and enablement requirements of 35 U.S.C. §

---

[1] VSi initially asserted independent claim 1 and its dependent claims 2, 3, 8, 9, 11 through 14, and 16 through 25, as well as claims 27, 28, 34, 37, 38, 42 through 44, 47, and 49 that are dependent upon claim 26.  As it is no longer asserting these additional claims, they are not discussed herein.

United States District Court
For the Northern District of California

112. VSi, in turn, moves to strike TIBCO's motion for invalidity regarding the "access code" claim elements, arguing that the invalidity contentions TIBCO filed under the Northern District of California's Patent Local Rules failed to disclose adequately this invalidity theory. TIBCO's final motion for summary judgment of invalidity argues that the claim elements of the '864 patent regarding "disparate [] databases" also fall short of the written description and enablement requirements.

For the reasons discussed below, VSi's motion to strike is denied. TIBCO has not met the high bar of proving with clear and convincing evidence that the '864 patent is invalid due to obviousness, nor that its asserted independent claim 26 is invalid for lack of written description or enablement of the "access code" features. TIBCO's motion for a finding of invalidity of claim 26's "disparate [] databases" limitations due to lack of written description and lack of enablement, however, must be granted. As that claim constitutes the only independent claim allegedly infringed in this action, summary judgment will be entered against VSi and in favor of TIBCO.

II.     BACKGROUND

A. The '864 Patent

Mark Vasudevan is the sole named inventor of the '864 patent, which is a continuation of his first patent, U.S. Patent Number 6,877,006 (the '006 patent), and claims priority to a provisional application for the '006 patent with a priority date of July 19, 2000. The '864 patent relates to a federated database system that retrieves data from disparate databases to create dynamically and to display to a user a data structure called an online analytical processing (OLAP) cube. The parties have agreed that an OLAP cube is "a data structure having more than two dimensions that provides online analytical processing." OLAP systems typically use an intermediate data repository, such as a "data warehouse," that is refreshed periodically with relevant data extracted from the multiple source databases. VSi's claimed inventions, however, are directed to a specific OLAP implementation that does not use an intermediate data warehouse. Instead, the '864 patent claims a system that populates the OLAP cube dynamically on demand directly from the disparate source databases without going through an intermediate repository.

United States District Court
For the Northern District of California

In 2004, VSi filed its application for the '864 patent, which issued in January 2007. VSi accuses TIBCO of infringing multiple claims of the '864 patent. The only asserted independent claim of that patent, claim 26, contains a "disparate [] database" limitation, requiring, among other things:

> b. in response to the retrieval request, accessing with a computer a plurality of disparate digital databases and retrieving with a computer requested data from such databases,
>
> c. assembling with a computer an OLAP cube of the retrieved data, wherein the OLAP cube is assembled dynamically on demand without accessing a multidimensional database of stored retrieved data,

The term "disparate [] databases" was construed as "databases having an absence of compatible keys or record identifier columns of similar value or format in the schemas or structures that would otherwise enable linking data." In response to the parties' request for a clarification, the following formulation proffered by a defendant in a related case, was adopted: "databases having an absence of compatible keys and an absence of record identifier columns of similar value and an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data."

As the dynamically federated OLAP cube of the alleged invention required live access of data stored in multiple different databases, it also created new data access security problems. These are addressed in the '864 patent by limitations pertaining to "access codes" in elements e, f, and j of independent claim 26:

> e. providing a plurality of access codes, each access code corresponding to a number of disparate databases that may be accessed with the access code,
>
> f. assigning each user an access code, and
>
> j. [sic] receiving and responding to a data access request only if the request is from a user with code authorizing access to all relevant constituent databases with the requested data.

The language of these claim limitations constitute the entirety of the '864 patent's discussion of access codes or a code authorizing access. There are no disclosures of the "access code" claim elements in the '864 patent other than in asserted claim 26 elements e through j, quoted above, and identical language in unasserted independent claim 1.

B.  Prosecution History

The provisional application included the "access code" security features, stating in the summary of the invention, "a hierarchy of user access and data update authorization is enabled by the present invention."  Claim 5 of the provisional application also discloses that the "user access . . . authorization" can be implemented through the method described verbatim by elements e, f, and j of claim 26 of the '864 patent.  Furthermore, it made the broad claim of being able to create OLAP cubes from "digital databases."  In 2001, VSi filed a non-provisional application that claimed priority to the provisional application and incorporated it by reference in its entirety.  In July of 2003, the PTO rejected that application's pending claims as obvious in light of U.S. Patent Number 6,516,324 (Jones).  In an attempt to save the application over prior art Jones, Vasudevan amended the application on October 30, 2003, so that the claims only covered creating OLAP cubes from "disparate digital databases."  The '006 patent issued in April 2005 and incorporates by reference the provisional application.

The '864 patent is a continuation of the '006 patent, which issued based on an application filed in 2004 claiming priority to the provisional application and again incorporating it by reference.  The '864 patent issued in January 2007 including the same "disparate [] databases" limitation in independent claim 26 that was introduced in the amended application for the '006 patent.

VSi points out the provisional application, dating back to July 2000, included the language describing the "access code" security features which it insists therefore demonstrates that Vasudevan had possession of them since at least the time of first application filing.  VSi concedes, however, that Vasudevan had not reduced the invention to practice as of the filing date of the provisional application.  TIBCO counters that the only systems created by VSi which practice the contested "access code" claim elements are certain versions of its "MIDaS" software, the first of which was not implemented until July of 2003.  TIBCO contends that the presence of the "access code" language in the provisional application is only evidence that Vasudevan realized the dynamic federated OLAP cube posed security problems necessitating the type of fix described by the "access code" claim elements, but that they were not sufficiently described or enabled.  TIBCO's position is

United States District Court
For the Northern District of California

1   that Vasudevan did not accomplish enablement of the invention's security features until 2003, after

2   years of experimentation.

3        As for the "disparate [] databases" claim elements, it is undisputed that Vasudevan began

4   working on enabling these features at least as early as the fall of 2001, although TIBCO relies on

5   Vasudevan's own deposition testimony to argue that he tried to implement connectivity to disparate

6   databases as early as September or October of 2000. It is further agreed that his work on these

7   features was not complete until the fall of 2003. The preferred embodiment of the '864 patent

8   instructs those skilled in the art to use an object database, such as the Jasmine or Versant databases,

9   to implement the invention. VSi admits that during the period of experimentation, Vasudevan was

10  unable to develop a working prototype using Jasmine or Versant, and was forced to switch to

11  another database not identified or disclosed in the specification.

12       The PTO reexamined the '864 patent and issued an ex parte reexamination certificate

13  confirming the patentability of all of its claims in January of 2009. During the reexamination, VSi

14  submitted a claim chart titled "Application of Prior Art to the Claims," indicating that U.S. Patent

15  Number 5,918,232 to Pouschine et. al. (the Pouschine patent) may raise a substantial new question

16  of patentability as to every element of claim 26 except for j, which relates to the security features.

17  TIBCO argues that, in doing so, VSi conceded that every element of claims 26 is disclosed by

18  Pouschine except j, and that therefore as the only novel element of the '864 patent, the entire patent

19  must fall if that claim element is found to be invalid.

20       Finally, TIBCO has identified certain prior art that was not before the PTO during the

21  prosecution of the '864 patent nor during the reexamination which it argues, in combination with the

22  Pouschine patent, renders the '864 patent obvious to a person of ordinary skill in the art. This prior

23  art includes: DataJoiner version 2.2.1, a commercial product developed and sold by IBM, publicly

24  available as of July 31, 1998; InterViso, publicly available as of 1995; WebFOCUS v3 release 3.2, a

25  commercial product developed and sold by Information Builders, made publicly available in May of

26  1998; and the book Data Warehousing for Dummies, which Vasudevan admitted purchasing in

27

28

1997. VSi's technical expert, Dr. Alfonso Cardenas,[2] opines that at the time the provisional

application was filed, a person of ordinary skill in the art:

> would have had an understanding of database technologies, digital communications (including data sharing and exchange) technologies and OLAP techniques. In general, a person of ordinary skill in the art would work in the area of database software design or administration. Such a person of ordinary skill in the art would have had at least a bachelor's degree in science or engineering with emphasis on computer programming or information technology, as well as one year of experience working on database research, design or administration, along with some familiarity of OLAP techniques. As another alternative, such a person of ordinary skill in the art would have had a Ph.D. degree in computer science. As yet another alternative, such a person of ordinary skill in the art would have had a Ph.D. in science or engineering with emphasis on computer programming or information technology along with some experience with database research, design or administration and familiarity of OLAP techniques.

Declaration of Joseph Loy in Support of TIBCO's Motion for Summary Judgment of Invalidity Due to Obviousness (Loy Decl.), Ex. 26 (Cardenas Report) at ¶45. Although TIBCO's expert has provided a different description of one of ordinary skill in the art, TIBCO acknowledges that for the purposes of summary judgment all inferences must be drawn in favor of VSi as the nonmoving party, and therefore VSi's formulation represents the operative definition here.

C. Procedural History

VSi served its disclosure of asserted claims and infringement contentions as required by Patent Local Rule 3-1 on January 25, 2012. As discussed above, Claim 26 is among VSi's asserted claims.[3] TIBCO served its Patent Local Rule 3-3 invalidity contentions on April 12, 2012. Although elements e through j each discusses the alleged invention's security features, TIBCO quoted only element j in arguing that the '864 patent is invalid for lack of enablement and lack of an adequate written description:

> The '864 patent also fails to provide an enabling disclosure of "receiving and responding to a data access request only if the request is from a user with code authorizing access to all relevant constituent databases with the requested data" (claim 1, 26) because it does not disclose how the authorization procedure would be performed. Particularly, it does not disclose how specific users and groups would be globally and/or locally authenticated. The '864 patent further fails to provide an

[2] While TIBCO has separately moved to strike certain portions of the expert reports of VSi's experts Dr. Cardenas and Dr. Dennis McLeod, and to exclude them from offering certain testimony regarding "disparate [] databases" to the jury, that motion is not relevant to the testimony discussed herein.
[3] As claim 26 is the only independent claim VSi asserts, its invalidity is dispositive of all of VSi's claims for relief in this case.

enabling disclosure because VSi's overbroad assertions of "receiving and responding to a data access request only if the request is from a user with code authorizing access to all relevant constituent databases with the requested data" (claim 1, 26) are not supported by the specification, which does not disclose how the authorization procedure alleged to be infringed by VSi would be performed.

* * *

The '864 patent also fails to provide adequate written description of "receiving and responding to a data access request only if the request is from a user with code authorizing access to all relevant constituent databases with the requested data" (claims 1, 26) because it does not disclose how the authorization procedure would be performed. Particularly, it does not disclose how specific users and groups would be globally and/or locally authenticated. The '864 patent further fails to provide adequate written description because VSi's overbroad assertions of "receiving and responding to a data access request only if the request is from a user with code authorizing access to all relevant constituent databases with the requested data" (claims 1, 26) are not supported by the specification, which does not reasonably convey to a person skilled in the art that the inventor was in possession of the claimed subject matter at the time of filing.

Declaration of Jordan Connors in Support of VSi's Motion to Strike, Ex. 2 (TIBCO's Invalidity Contentions) at 42-43.

## III.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(A). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322 n.3; *see also* Fed. R. Civ. P. 56(c)(1)(B). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. All evidence must be viewed in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255.

United States District Court

For the Northern District of California

B.  Validity of a Patent Under 35 U.S.C. § 103

It is settled law that all patents enjoy a presumption of validity that may be overcome only by clear and convincing evidence. *See* 35 U.S.C. § 282; *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). TIBCO moves for summary judgment on the basis that the '864 patent is invalid because it is obvious in light of the prior art and the knowledge of one of ordinary skill in that art. "Obviousness is a question of law, premised on underlying factual determinations." *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 722-23 (Fed. Cir. 2002). "Therefore, a district court properly may grant summary judgment on obviousness . . . only when the underlying factual inquiries present no lingering genuine issues." *Id.* at 723. "An obviousness inquiry assesses 'the differences between the subject matter sought to be patented and the prior art' to ascertain whether 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Id.* at 725 (quoting 35 U.S.C. § 103(a)). "The underlying factual inquiries are: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Id.* at 725-26 (internal quotation omitted).

In particular, the party "alleging invalidity must show prior art references which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of invention." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999). "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007). "Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420. "[T]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416.

"The party seeking patent invalidity based on obviousness must also show some motivation or suggestion to combine the prior art teachings." *Al-Site Corp.*, 174 F.3d at 1323-24. "One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the

time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, 550 U.S. at 419-20.

Given that patents are strongly presumed to be valid, *see* 35 U.S.C. § 282, however, "a defendant must show invalidity by facts supported by clear and convincing evidence." *Beckson Marine*, 292 F.3d at 725. As it is presumed "that the Examiner did his duty and knew what claims he was allowing," it follows that, "the challenger's burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application." *Al-Site Corp.*, 174 F.3d at 1323 (internal quotations omitted).

C.  Validity of a Patent Under 35 U.S.C. § 112

TIBCO moves for summary judgment on the basis that the '864 patent is invalid for failure to meet two of the distinct requirements set forth under 35 U.S.C. § 112(a) (formerly 35 U.S.C. § 112, ¶1), those of written description and enablement:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . .

i.  Written Description Requirement

"Written description is a factual inquiry." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011). "The written description requirement requires the inventor to disclose the claimed invention so as to allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Billups-Rothenberg, Inc. v. Assoc. Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1036 (Fed. Cir. 2011) (internal quotation omitted). "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Possession can be proven "by such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention. Although the exact terms need not be used in hace verba, the specification must contain an equivalent description of the claimed subject matter." *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 822 F. Supp. 2d 1020, 1045-25 (N.D.

United States District Court
For the Northern District of California

1   Cal. 2011). "The purpose of the written description requirement is to ensure that the scope of the

2   right to exclude, as set forth in the claims, does not overreach the scope of the inventor's

3   contribution to the field of the art as described in the patent specification." *In re Katz Interactive*,

4   639 F.3d at 1319 (internal quotation omitted).

5                     ii.  Enablement Requirement

6         "Enablement under § 112 is a question of law with underlying questions of fact regarding

7   undue experimentation." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors*

8   *USA*, 617 F.3d 1296, 1305 (Fed. Cir. 2010). "It is the specification, not the knowledge of one skilled

9   in the art, that must supply the novel aspects of an invention in order to constitute adequate

10   enablement." *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997). "To be

11   enabling, the specification of a patent must teach those skilled in the art how to make and use the full

12   scope of the claimed invention without undue experimentation." *ALZA Corp. v. Andrx Pharms.*,

13   LLC, 603 F.3d 935, 940 (Fed. Cir. 2010).

14         In *In re Wands*, the Federal Circuit set forth the factors that a court may consider when

15   determining whether a disclosure requires undue experimentation:

16           (1) the quantity of experimentation necessary, (2) the amount of direction or
        guidance presented, (3) the presence or absence of working examples, (4) the

17           nature of the invention, (5) the state of the prior art, (6) the relative skill of
        those in the art, (7) the predictability or unpredictability of the art, and (8) the

18           breadth of the claims.

19   858 F.2d 731, 737 (Fed. Cir. 1988).

20                     IV.    DISCUSSION

21

22       A. Invalidity Due to Obviousness

23         TIBCO moves for summary judgment of invalidity due to obviousness. As previously

24   mentioned, the presumption that patents are valid may only be overcome by clear and convincing

25   evidence. *See* 35 U.S.C. § 282; *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d

26   1057, 1067 (Fed. Cir. 2003). TIBCO argues that the asserted claims of the '864 patent are obvious

27   in light of a combination of Pouschine, DataJoiner, and the knowledge of a person of ordinary skill

28   in the art. It further argues that claim 26 is obvious in light of InterViso, WebFOCUS and the

United States District Court

For the Northern District of California

knowledge of a person of ordinary skill in the art. It further contends that the dependent claims of the patent are obvious in light of a variety of prior art references.

            i.  Pouschine, DataJoiner, and the Knowledge of a Person of Ordinary Skill in the Art

Pouschine was filed on November 26, 1997 and issued on June 29, 1999. VSi does not dispute that it represents prior art. *See* 35 U.S.C. § 102(a), (b), & (e). That patent teaches a method and system for dynamically assembling OLAP cubes from disparate databases in response to user queries. VSi filed a request for *ex parte* reexamination of the '864 patent on the basis that Pouschine may raise a substantial new question of its patentability. As discussed at greater length below with respect to the motion for summary judgment of invalidity regarding the "access code" features, during the reexamination VSi submitted a claim chart to the PTO identifying, for each claim of the '864 patent, aspects of the Pouschine patent for which "a substantial likelihood that a reasonable examiner would consider [it] . . . important in deciding whether or not the claim is patentable." Manual of Patent Examining Procedure (MPEP) § 2242. For each element of each claim of the '864 patent, VSi identified a corresponding portion of Pouschine, except for element j of independent claim 26, dependent claims 36, 39, 41, 45, and 50, for which it stated Pouschine "does not appear to disclose this element." The PTO ultimately confirmed the patentability of the '864 patent over Pouschine, noting that it did not disclose elements e, f, and j of claims 1, 26, 51, and 53 (the "access code" features).

DataJoiner version 2.1.1 is a product developed and sold by IBM. VSi does not dispute that it is prior art that was not considered by the PTO during the prosecution or reexamination of the patent-in-suit. *See* 35 U.S.C. § 102(a), (b) & (g). During a previous case, VSi stated in response to an interrogatory that the only elements of claim 26 of the '864 patent that were not present in DataJoiner were elements c and d.

TIBCO argues that it is entitled to summary judgment, because VSi has admitted that Pouschine discloses every element of independent claim 26 except j, DataJoiner discloses every element of that claim except c and d, and that one of ordinary skill in the art would be motivated to use his or her knowledge to combine the teachings of Pouschine and DataJoiner, which collectively

United States District Court
For the Northern District of California

encompass all of the elements of independent claim 26 of the asserted patent, and practice the alleged invention through the combination of these known elements.

TIBCO argues that each element of claim 26 was disclosed the prior art, rather than invented by Vasudevan, and therefore the alleged invention would have been obvious to one of ordinary skill. As discussed below in the context of TIBCO's motion for summary judgment of invalidity for lack of written description and enablement of the "access code" features, the purpose of VSi's reexamination claim chart was only to identify prior art that a reasonable examinee would consider important in deciding whether or not its claims were patentable. Dr. Cardenas, VSi's expert, opines that Pouschine fails to teach several elements of independent claim 26 of the '864 patent, including elements b through f in addition to j. In reaffirming the validity of the '864 patent after reexamination, the PTO itself indicated that Pouschine did not teach at least elements e, f, and j. Drawing all inferences in favor of VSi, there is a question of material fact as to whether its statements to the PTO constituted an admission that element j of claim 26 is the only novel aspect of the alleged invention. With respect to DataJoiner, Dr. Cardenas opines that it fails to disclose any of the elements of claim 26. Likewise, VSi has also raised material questions of fact as to the scope of the admissions TIBCO claims Vasudevan, Dr. Cardenas, and VSi's additional technical expert Dr. Dennis McLeod made during their depositions. TIBCO has not met its burden of proving by clear and convincing evidence that Pouschine and DataJoiner, considered collectively by a person of ordinary skill in the art, would render the alleged invention of the '864 patent obvious. Instead, questions of material fact remain as to the scope of VSi's supposed admissions and the extent of the disclosures made by the prior art.

> ii.   InterViso, WebFOCUS, Data Warehousing for Dummies, and the Knowledge of a Person of Ordinary Skill in the Art

TIBCO refers to an article published in the Very Large Data Base Journal in 1995, "InterViso: Dealing with the Complexity of Federated Database Access" as "InterViso." VSi concedes that this article was publicly available and is prior art that was not before the PTO during the prosecution or reexamination of the patent-in-suit. *See* 35 U.S.C. § 102(a) & (b). TIBCO contends that VSi, in response to a request for admission served upon it during a previous case, has

United States District Court

For the Northern District of California

1    conceded that InterViso discloses element e of claim 26, which related to providing access codes that

2    correspond to disparate databases.

3         WebFOCUS v3 release 3.2 is a commercial product developed and sold by Information

4    Builders that was made available to the public in approximately May of 1998. *See* 35 U.S.C. 102(a),

5    (b), & (g).  A manual entitled "Using the WebFOCUS Suite Version 3 Release 3.2" is provided to

6    customers who purchase the product.  VSi does not contest that this prior art was absent before the

7    PTO during the prosecution or reexamination of the asserted patent.  TIBCO characterizes

8    WebFOCUS as building OLAP cubes that avoid stale data by running dynamic reports from

9    virtually any corporate databases on any computer platform.  WebFOCUS users also receive user

10   IDs and passwords that TIBCO argues are similar to the "access codes" claimed by the '864 patent.

11   Furthermore, TIBCO contends that WebFOCUS's OLAP control panel enables users to perform the

12   same functions claimed by the asserted dependent claims of the '864 patent, including drill up, drill

13   down, and pivot data.

14        TIBCO makes a cursory argument that the combination of InterViso and WebFOCUS

15   renders the '864 patent obvious in light of the knowledge of a person of ordinary skill in the art.  It

16   has failed to meet its burden of providing clear and convincing evidence of such obviousness.

17   Instead, TIBCO's presentation of this issue relies largely on legal conclusions that these prior art

18   references combine many of the same well-known elements as the asserted patent and a person of

19   ordinary skill in the art would have been motivated to combine them because they are all from the

20   same field of endeavor.  Moreover, VSi has provided testimony from its expert Dr. Cardenas that

21   InterViso is missing at least elements a through d, f, and j of the '864 patent's claim 26 and that

22   WebFOCUS does not teach any element of the claim.  TIBCO has not provided clear and convincing

23   evidence that InterViso and WebFOCUS collectively and in combination with the knowledge of the

24   person of ordinary skill in the art teach every element of claim 26.

25              iii.   Obviousness of the Dependent Claims

26        TIBCO's arguments in support of obviousness of dependent claims 33, 36, 39, 41, 45, 46, 48,

27   and 50 are similarly conclusory.  TIBCO contends that the Pouschine/DataJoiner and

28   InterViso/WebFOCUS combinations render dependent claims 33, 36, 39, 41, 45, 46, and 48 obvious,

United States District Court

For the Northern District of California

particularly in light of the knowledge of a person of ordinary skill in the art.  For dependent claim 50, it relies only on the Pouschine /DataJoiner combination.  In addition, TIBCO argues that claims 39, 41, 45, 46, 48, and 50, are obvious when the relevant prior art combinations are viewed in light of the additional prior art reference "Data Warehousing for Dummies."

Published in 1997 and part of the widely distributed ". . . for Dummies" series, Vasudevan testified at his deposition that he purchased it that year and consulted it.  *See* 35 U.S.C. § 102(a) & (b).  TIBCO notes that it discusses database querying and report, accessing multiple data sources, OLAP, virtual data warehousing, multidimensional databases, and security needs in federated database systems.  It was not before the PTO during the prosecution or reexamination of the '864 patent.

For each dependent claim, TIBCO states that a certain technology or technique covered by the claim was well-known in the art, and therefore it would have been obvious to use it within the context of the claimed invention, sometimes in combination with prior art.  This type of conclusory analysis simply does not meet the clear and convincing standard for proving obviousness.  Again, TIBCO's assertions of obviousness are contradicted by VSi's technical expert, Dr. Cardenas, who has opined that each of the challenged dependent claims are not obvious.  Accordingly, TIBCO's motion for summary judgment of invalidity due to obviousness must be denied.

B.  Motion to Strike

VSi moves to strike TIBCO's entire motion for summary judgment of invalidity for lack of written description and enablement of the "access code" security features on the ground that TIBCO's invalidity contentions did not disclose any theory indicating the '864 patent failed to provide an enabling disclosure or adequate written description with respect to elements e or f. Specifically, VSi contends that the arguments in TIBCO's motion for summary judgment with respect to elements e and f are so intertwined with those based on element j that the motion must be struck in its entirety, even though they concede that TIBCO's invalidity contentions disclosed an invalidity theory based on element j.

1   TIBCO counters that even though its invalidity contentions do not quote from elements e and

2   f, they provided adequate notice that the asserted claims are invalid for failure to comply with the

3   written description and enablement requirements with respect to the access code scheme described

4   by all three elements: e, f, and j.  Furthermore, TIBCO argues that VSi had actual notice of its theory

5   that the access code scheme renders the claims invalid because TIBCO deposed Vasudevan on that

6   subject and requested that VSi produce its responses to discovery requests from prior cases against

7   IBM and Oracle relative to that issue.

8   VSi argues that the Northern District of California routinely precludes parties in patent

9   infringement lawsuits from relying on theories that they failed to include in the disclosures required

10  by the Patent Local Rules, which were "designed to require parties to crystallize their theories of the

11  case early in the litigation and to adhere to those theories once they have been disclosed."  *O2 Micro*

12  *Int'l Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006).  The

13  decisions from this district on which VSi relies in support of this contention are distinguishable from

14  the instant case.  For example, both *Spectros Corp. v. Thermo Fisher Scientific*, 2012 WL 1965887

15  (N.D. Cal. May 31, 2012), and *Hologic, Inc. v. SenoRx, Inc.*, 2009 WL 8760730 (N.D. Cal. Oct. 30,

16  2009), are rulings based on Patent Local Rule 3-1, regarding infringement contentions, rather than

17  Patent Local Rule 3-3, which governs invalidity contentions.  Infringement contentions under Patent

18  Local Rule 3-1 must be more specific.  Patent Local Rule 3-1 requires a party claiming infringement

19  to disclose "a chart identifying specifically where each limitation of each asserted claim is found

20  within each Accused Instrumentality . . . ."  By contrast, patent local rule 3-3(d) mandates that

21  invalidity contentions contain simply "[a]ny grounds of invalidity based on . . . enablement or

22  written description under 35 U.S.C. § 112(1) of any of the asserted claims."

23  The plaintiff in *Spectros* was not permitted to assert infringement based on the doctrine of

24  equivalents when its Patent Local Rule 3-1 infringement contentions "specifically represented that it

25  was alleging a claim for literal infringement" and made no mention of the doctrine of equivalents.

26  2012 WL 1965887 at *6.  In *Hologic*, defendant's motion for summary judgment on the basis of

27  non-infringement was granted because the plaintiff had not disclosed its infringement theory

28

United States District Court

For the Northern District of California

1    adequately in its Patent Local Rule 3-1 infringement contentions and was therefore precluded from

2    asserting it.

3         VSi has identified only one decision interpreting Patent Local Rule 3-3(d) in which a

4    defendant was prevented from advancing an invalidity theory based on a failure to disclose it

5    adequately—a slip opinion from the Central District of California. *See Biocell Tech. LLV v.*

6    *Arthuro-7, et. al.*, No. SACV 12-00516-JVS (RNBx) (C.D. Cal. Apr. 15, 2013).  In that case,

7    defendants' invalidity contentions only generically stated that fifteen claims were indefinite because

8    a person of ordinary skill in the art "would not understand the bounds of the claims in which they

9    appear when read in light of the specification." *Id.* at 14.  Defendants subsequently asserted that all

10   terms found in the patents in suit require their plain and ordinary meaning, and stipulated to a

11   construction of the claim term "average molecular weight."  Only after they had done so did they

12   seek to assert invalidity on the basis that the term "average molecular weight" and one other claim

13   term were indefinite. *Id.* at 15.  Quite reasonably, the Central District found the invalidity

14   contentions' "failure to be specific as to the 'grounds of invalidity based on indefiniteness' [to be]

15   striking" and prohibited defendants from "prejudice[ing] an opposing party by unexpectedly

16   reasserting an indefiniteness argument that was not previously or consistently raised and after

17   stipulating to claim construction." *Id.* at 15, 16.

18        The difference between the behavior of the defendants in *Biocell* and this case are significant.

19   TIBCO's invalidity contentions specifically give notice of its position that:

20        each identified claim of the '864 patent is invalid because the '864 patent
         specification does not include sufficient written description of the alleged
21        invention, and the manner and process of making and using it, in such full, clear,
         concise, and exact terms as to enable any person skilled in the art to which it
22        pertains, or with which it is most[] nearly connected, to make and sue the alleged
         inventions. See 35 U.S.C. § 112, ¶ 1.
23

24   Moreover, the invalidity contentions specifically identified at least element j as the subject of this

25   invalidity contention, quoting it directly:

26        The '864 patent also fails to provide an enabling disclosure of "receiving and
         responding to a data access request only if the request is from a user with code
27        authorizing access to all relevant constituent databases with the requested data"
         (claim 1, 26) because it does not disclose how the authorization procedure would
28        be performed.

The gravamen of this dispute is whether Patent Local Rule 3-3(d)'s requirement that a party's invalidity contentions contain "[a]ny grounds of invalidity based on . . . enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims" demands that TIBCO quote or explicitly cite to elements e and f of independent claim 26. TIBCO's invalidity contentions state that the '864 patent "fails to provide an enabling disclosure of" and "fails to provide an adequate written description of" element j "because it does not disclose how the authorization procedure would be performed." TIBCO argues that the "authorization procedure" to which its invalidity contentions refers encompasses elements e and f as well as j, as all three elements discuss the same "access codes" or "code authorizing access."

"[T]he disclosure standard for invalidity contentions based upon enablement and written description is lower than that required for a claim of obviousness [under patent local rule 3-3(c)] . . . but high enough that it must give the other party enough notice that it can engage in full, timely discovery and litigate its case." *MedImmune, LLC v. PDL BioPharma, Inc.*, 2010 WL 760443, at *3 (N.D. Cal. Mar. 4, 2010). Even if TIBCO's "disclosure leaves many important questions unanswered . . . the disclosure nonetheless meets the requirements of the local rules." *Id.* VSi "obviously has an in-depth understanding of its own patent specification," including that the "code authorizing access" referenced in element j is the same as the "access codes" discussed in elements e and f, such that if there were inadequacies alleged with the written description or enablement of the former, there would necessarily be similar inadequacies in the latter. VSi contends the invalidity contentions in *MedImmune* "identifie[d] the very specific grounds for [defendant's] conclusion" that the patent-in-suit failed to meet the written description and enablement requirements whereas, by contrast, TIBCO's invalidity contentions are vague and general. However, even if TIBCO's invalidity contentions could have been more specific, they are nonetheless adequate under the standard set by Patent Local Rule 3-3(d). Accordingly, the motion to strike is denied.[4]

---

[4] TIBCO presents an additional argument that, beyond providing notice to VSi of its invalidity theories through its invalidity contentions, VSi received actual notice that it would assert these theories because TIBCO took discovery on topics relevant to them. TIBCO has provided no support for the notion that asking deposition questions or requesting the production of documents related to an invalidity theory undisclosed in a party's invalidity contentions under the local rules could somehow "cure" such a deficiency in the invalidity contentions. To the contrary, the Patent Local Rules were designed to require the parties to crystallize their theories early on in the litigation to prevent parties from constantly shifting their theories throughout the case. Although the parties

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

C.  Invalidity Due to Lack of Written Description of Access Code Feature

Although the '864 patent's specification does not discuss the "access code" security features, they are described by elements e, f, and j of independent claim 26.   Original claims filed with the application to which the patent claims priority "are part of the original specification." *Id.* at 1349. Here, claim 5 of the provisional application discloses that "user access . . . authorization" can be implemented through the method described verbatim by elements e, f, and j of claim 26 of the '864 patent.  Accordingly, "[t]o prevail, [TIBCO] must show that the description contained in the original claims does not adequately describe the invention. . . . [TIBCO]'s mere observation that the limitation language is not described in the specification or the drawings does not entitle it to summary judgment of invalidity." *Cybersource Corp. v. Retail Decisions, Inc.*, 2008 U.S. Dist. LEXIS 80370, at *11-12 (N.D. Cal. Oct. 10, 2008).  "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad*, 598 F.3d at 1351.

TIBCO characterizes elements e, f, and j of claim 26 as recognizing the need for federated OLAP cubes to have a data security mechanism for mapping user credentials to disparate databases in order to grant users access to view, edit, and delete only the underlying information to which they should have access, but failing to disclose how to solve this problem.  It argues that the claims do not meaningfully disclose the claimed invention, thereby failing to fulfill the purpose of the written description requirement.  Instead, TIBCO's position is that the claims simply indicate that Vasudevan had identified and wished to solve this security problem as of the filing date of the provisional application.

VSi attempts to bolster the claim language by pointing to Figure 6 in the patent specification, language in the summary of the invention, and figures in the provisional application as further written description of the patent's security features.  First, Figure 6 does not describe the security features because it makes no reference to access codes and fails to identify that the invention would only "receiv[e] and respond[] to a data access request only if the request is from a user with code

---

dispute whether the deposition questions and requests for the production of documents posed by TIBCO were sufficient to put VSI on actual notice of TIBCO's invalidity theories regarding elements e and f, such an inquiry is irrelevant.  TIBCO's invalidity contentions are sufficient.

United States District Court
For the Northern District of California

1  authorizing access to all relevant constituent databases with the requested data" as required by the

2  asserted claims.  Instead, it indicates only that a software application can establish a database link

3  using "connection methods and protocols 655." VSi argues that the specification provides at least

4  one example of the "connection methods and protocols" mentioned in Figure 6: "OLE-DB" which

5  "allows access to most databases" and "native connection method[s]." VSi does not explain how

6  "OLE-DB" relates to, let alone describes, the claimed security features.  Next, the summary of

7  invention states the "present invention, for the first time, assembles an OLAP [cube] at run time, in

8  response to a data query by a user, by accessing a plurality of incompatible source databases." VSi

9  characterizes this as a description of the security features.  This passing reference to "accessing" a

10  database, however, does not expressly tie user access authorization to accessing disparate databases.

11  Finally, VSi argues that Figures 20 through 22 of the provisional application disclose the access

12  codes of the alleged invention.  Yet, these figures make no mention whatsoever of access codes.

13  Aside from the claim language itself, nothing in the patent's written description nor the provisional

14  application mentions "access codes" or "codes authorizing access."

15       VSi maintains that the original claim language, alone, still satisfies the written description

16  requirement.  "Original claims are part of the specification and in many cases will satisfy the written

17  description requirement." *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,

18  635 F.3d1373, 1380 (Fed. Cir. 2011).  VSi argues that they do so here by virtue of Vasudevan's

19  description of an aspect of the invention in a claim filed as part of the original application which

20  strongly suggests that he was in possession of that aspect of the invention as of the application filing

21  date.  From VSi's perspective, the mere fact that an original claim of the provisional application

22  recited the same language as elements e, f, and j of claim 26 of the '864 patent demonstrates that

23  Vasudevan had possession of the access code security features as of the provisional application's

24  filing in 2000, and no further description of them is required for the patent to satisfy the written

25  description requirement.

26       TIBCO disputes that the written description requirement can be automatically satisfied in that

27  fashion.  Indeed, the Federal Circuit has affirmed that district courts may grant summary judgment

28  of invalidity for lack of written description in such circumstances.  *See Ariad*, 598 F.3d at 1349;

United States District Court
For the Northern District of California

1  *Fiers v. Revel*, 984 F.2d 1164, 1170 (Fed. Cir. 1993). Even if the provisional application included

2  the same claim language as the patent, if the written description in the provisional application's

3  original claims merely evinced the inventor's "wish" or "plan" to invent what was claimed, the

4  patent may be invalid for lack of written description. *Fiers*, 984 F.2d at 1170. "Although many

5  original claims will satisfy the written description requirement," VSi concedes, "certain claims may

6  not." *Ariad,* 598 F.3d at 1349. "For example, a generic claim may define the boundaries of a vast

7  genus of chemical compounds, and yet the question may still remain whether the specification,

8  including original claim language, demonstrates that the applicant has invented species sufficient to

9  support a claim to a genus." *Id.* VSi argues that original claims are more likely to be insufficient in

10 unpredictable, primitive, or uncertain technology areas, such as chemistry and life sciences, but not

11 in more advanced and established fields such as computer science.

12       VSi's technical expert, Dr. Cardenas, opines that the claim language of elements e, f, and j

13 sufficiently convey to a person of ordinary skill in the art (whom he describes as having an "M.S. or

14 Ph.D. degree in computer science") that Vasudevan had possession of the "access code" security

15 features as of the filing date of the provisional application.  Dr. Cardenas declares that "[p]ersons of

16 ordinary skill have known of database 'access codes,' such as a username and password—certainly

17 by July 2000 priority date of VSI's '864 patent." Dkt. 132-10 at 5.  As an example that this

18 knowledge was commonplace by 2000, Dr. Cardenas points to his own book, which described such

19 security features as early as 1979.  Accordingly, Dr. Cardenas concludes, "persons of ordinary skill

20 certainly would have known how to make and use a data storage medium that provided such 'access

21 codes' without undue experimentation." *Id.* at 5.  Although TIBCO discounts Dr. Cardenas's

22 opinion as conclusory, it has not submitted any contrary evidence.  The Federal Circuit counsels that

23 "[w]here there is a material dispute as to the credibility and weight that should be afforded to

24 conflicting expert reports, summary judgment is usually inappropriate." *Crown Packaging*, 635 F.3d

25 at 1384.  Given that TIBCO did not submit conflicting expert testimony, but merely questions the

26 weight that should be given to that of VSi's expert, summary judgment on the basis of lack of

27 adequate written description is unwarranted.  VSi has raised a material question of fact as to whether

28 the claim language alone provided a sufficient written description of the "access code" security

United States District Court
For the Northern District of California

1    features to demonstrate that Vasudevan was in possession of them at the time he filed the provisional

2    application.

3

      D.  Invalidity Due to Lack of Enablement of the Access Code Features

4

5        TIBCO argues that there is no need for the Court to apply the *Wand* factors here because the

6    '864 patent provides no enabling disclosure whatsoever.  VSi contends that those factors should be

7    applied because the original claims themselves constitute the disclosure.  As previously noted,

8    original claims filed with the application to which the patent claims priority constitute part of the

9    original specification.  *See Ariad*, 598 F.3d at 1349.  Accordingly, the *Wands* factors are applied

10   below to determine whether this original claim language enables the claimed invention.

11       TIBCO contends that the quantity of experimentation necessary for Vasudevan to enable the

12   alleged invention is undue.  Certainly a significant time lapse transpired between August 1999, when

13   Vasudevan allegedly conceived of the invention and July 2003, the date he finally reduced it to

14   practice.  Additionally, Vasudevan claims that he worked during these nearly four years at a rate of

15   more than 2000 hours a year in order to implement the claims of the '864 patent to practice.  VSi

16   concedes that Vasudevan did not have a working example of his alleged invention practicing the

17   '864 patent's "access code" security features at the time the provisional application was filed.  It

18   further admits that it took Vasudevan years to build an embodiment of *all* of the claims of the '864

19   patent, but argues that only approximately 200 hours of experimentation were needed to implement

20   the "access code" security features.  Vasudevan testified that once he began working on them, he

21   implemented them "within a few months" and "it didn't take long at all."  Declaration of Eric Enger

22   in Support of VSi's Opposition to TIBCO's Motion for Summary Judgment of Invalidity for Lack of

23   Written Description and Enablement of "Access Code" Features, Ex. 10 (Vasudevan Depo.) at

24   227:15-229:24.  As all factual disputes must be resolved in favor of VSi, as the nonmoving party, the

25   200 hour period of experimentation is taken as true for purposes of summary judgment.  Although

26   the absence of a working embodiment upon the filing of the provisional application weighs against

27   enablement, the relatively minor amount of experiment required to embody the "access code"

28   features weighs in the opposite direction.

United States District Court

For the Northern District of California

VSi characterizes the specification's guidance for enabling the "access code" features as meaningful, describing the claims as detailed and clearly identifying the functionality of the security features. Given that the claim language itself is the only guidance regarding the "access code" features provided in the specification, and that claim language is rather spare, VSi's description of it is unconvincing. The amount of direction or guidance provided by the specification weighs against enablement.

Nonetheless, VSi argues that the relatively cursory discussion of the "access code" features in the '864 patent is sufficient to enable them because a person of ordinary skill in the art would have been able to recognize the contours of this functionality from the disclosures based on Vasudevan's deposition testimony that a person of ordinary skill in the art in 2000 could have implemented the access codes simply by referring to Figure 6's reference to "connection methods and protocols." Additionally, Dr. Cardenas opines that the claim language alone enables the challenged limitations because in 2000, when the provisional application was filed, techniques for providing access codes for databases were well known to persons of ordinary skill in the art.

Essentially, VSi contends that the security features are enabled despite the minimal description of them provided by the patent because such features would have been well-known to one of ordinary skill in the art in the year 2000. VSi admits that the state of the prior art includes such security features. According to Dr. Cardenas, the relative skill of those in the art is fairly high, as such persons would have a "M.S. or Ph.D. degree in computer science." VSi argues that given the advanced state of the prior art, a person of ordinary skill in the art, in a predictable field such as software, would have been able to code the security features without undue experimentation.

TIBCO asserts that VSi is estopped from advancing such arguments because, during the reexamination of the '864 patent, it conceded to the PTO that element j of claim 26 is the only element not disclosed by prior art Pouschine. "The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005). From TIBCO's perspective, VSi's statements to the PTO were tantamount to an

United States District Court
For the Northern District of California

admission that element j of claims 26 represents the only novel aspect of the invention leading the

PTO to confirm the patentability of the '864 patent over Pouschine based on that representation.

TIBCO argues, therefore, that VSi may not rely upon one having ordinary skill in the art to "flesh

out" or supplement the claim language in lieu of an enabling disclosure because it is "the

specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an

invention in order to constitute adequate enablement." *Genentech*, 108 F.3d at 1366. "The novel

aspects of the invention must be disclosed and not left to inference, that is, a patentee may not rely

on the inference of a person of ordinary skill in the pertinent art to supply such novel aspects."

*Crown Operations Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1380 (Fed. Cir. 2002).

The Examiner ultimately described element j as the most important element of the

independent claims and granted a reexamination certificate based on the Pouschine patent's lack of

the access code scheme. TIBCO argues that VSi's may not now disavow its statements to the PTO

during reexamination. It insists that, alone, the claim language does not supply the novel aspects of

element j, and therefore application of estoppel against VSi would be fatal to the validity of the '864

patent.

VSi denies that the statements it made in the reexamination are binding on its litigation

positions because the standards applied during each procedure are different. During reexamination,

VSi, as the requester, had the obligation to identify to the PTO the claims for which it was requesting

reexamination and to disclose to the PTO prior art that could "raise[] a substantial question of

patentability where there is a substantial likelihood that a reasonable examiner would consider the

prior art patent . . . important in deciding whether or not the claim is patentable." Manual of Patent

Examining Procedure (MPEP) § 2242. Furthermore, the claims that are the subject of reexamination

should be given their broadest reasonable construction consistent with the specification, which may

result in the PTO construing them differently than they are later construed in litigation. *See*

*Therasense, Inc. v. Becton, Dickenson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc); *see*

*also* MPEP § 2258(1)(G). Finally, the PTO applies a preponderance of the evidence standard to

invalidity claims by an accused infringer during reexamination, whereas here, the clear and

convincing standard applies. *See Therasense*, 649 F.3d at 1292. VSi explains that its reexamination

United States District Court
For the Northern District of California

claim chart does not constitute an admission that the security features in element j of claim 26 are the only novel limitations of the '864 patent owing to these differences between the standards applied by the PTO during reexamination and those applicable in federal courts. For this reason, VSi's reexamination request explicitly underscored "that the validity positions described herein . . . are not necessarily the positions VSi would take in . . . any litigations."

TIBCO has identified only one case in support of the proposition that statements before the PTO similar to those made by VSi constitute a binding admission that a particular claim element is the only novel limitation of a patent. *DatCard Sys., Inc. v. Pacsgear, Inc.*, a slip opinion from the Central District of California, held that the patentee's statements to the PTO regarding what elements of the alleged invention were disclosed in the prior art were binding for purposes of an obviousness determination on summary judgment of invalidity. No. 8:10-cv-012288-MRP-VBK (C.D. Cal. Mar. 12, 2013), Slip Op. at 9. In *DatCard*, however, the patentee made its statements in the context of an Accelerated Examination Support Document (AESD) during an Accelerated Examination procedure. To participate in that specialized procedure, a patentee must file an AESD identifying references in the prior art most closely related to the claims and make admissions regarding which references disclose elements of the claimed features. *See* Changes to Practice for Petitions in Patent Applications To Make Special and for Accelerated Examination, 71 Fed. Reg. 36324-25 (June 26, 2006). In other words, in exchange for a quicker examination, an applicant is required to make statements that will trigger prosecution history estoppel. VSi, by contrast, was not participating in an Accelerated Examination and the PTO did not necessarily consider its claim chart to constitute such admissions. Rather, the purpose of VSi's claim chart was only to identify prior art that a reasonable examiner would consider important in deciding whether or not its claims were patentable.

Drawing all inferences in favor of VSi as the nonmoving party, there is at least a question of material fact as to whether it admitted to the PTO that element j of claims 26 is the only novel aspect of the alleged invention. If element j is not, it is permissible for the person of skill in the art to supplement the language of element j with his or her own knowledge of the prior art to enable the claimed security features. Given Vasudevan and Dr. Cardenas's testimony that a person of ordinary

skill in the art would have sufficient knowledge to enable the features without undue

experimentation, and considering the fairly high skill of such a person, the advanced state of the

prior art, the predictability of the art, and the relatively small quantity of experimentation necessary

for Vasudevan himself to enable the security features, TIBCO's motion for summary judgment of

invalidity cannot be granted to the extent it is specifically based on the enablement of the "access

code" features

E.  Invalidity Due to Lack of Written Description of the "Disparate [] Databases" Features

TBICO moves for summary judgment of invalidity for lack of written description of the

"disparate [] databases" features of the alleged invention.  It argues that the provisional application

does not contain any disclosure regarding how to access, retrieve, or aggregate data from disparate

databases in its specification or its claims.  Given that the "disparate [] databases" limitation was not

added until three years after the filing of the provisional application, such an omission is

unsurprising.  TIBCO contends that the only mention of the phrase "disparate [] databases" in the

'864 patent is in the context of the prior art, stating that in order to access disparate databases using

the prior art, the databases have to be "pre-configured at the design-time of the information

systems."  The figures in the '864 patent are identical to those that were contained in the provisional

application.  Indeed, Vasudevan admitted that among screenshots included as figures in the

provisional application to illustrate the alleged invention are those from software that was not able to

access and retrieve data from disparate databases, and therefore does not practice the patent-in-suit.

Accordingly, TIBCO argues that the written description in the '864 patent is inadequate because,

rather than describing the "disparate [] databases" limitation, it describes a system that cannot access

and retrieve data from disparate databases.

The provisional application to which the '864 patent claims priority was amended in 2003 to

overcome prior art Jones, narrowing its claims from covering the accessing of all "digital databases"

to accessing only "disparate digital databases."  VSi concedes that the patent statute prohibits an

amendment to a patent application from "introduce[ing] new matter into the disclosure of the

invention."  35 U.S.C. § 132(a); *see also Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*,

United States District Court
For the Northern District of California

1   499 Fed. Appx. 5, 9, 13-14 (Fed. Cir. 2012) (affirming lack of written description because the

2   patentee added a limitation that improperly expanded the claim scope beyond the patent disclosure).

3   VSi argues, however, that limiting the patent's scope to "disparate digital databases" rather than all

4   "digital databases" did not introduce new matter into the disclosure of the invention because the

5   patent's coverage was narrowed to include only a subset of digital databases, rather than expanded.

6   This argument, while clever, is unpersuasive for two reasons.  First, VSi does not point to a single

7   case in which the "narrowing" argument it advances was adopted.  Second, although "disparate

8   digital databases" are a sub-set of all digital databases, it does not logically follow that the

9   amendment Vasudevan made to the provisional application "narrowed" its claims.  Indeed, the

10  amendment was filed in order to distinguish his purported invention over the prior art, by, for the

11  first time claiming that it did something new and different than what was disclosed by Jones.  While,

12  for example, data from digital databases that are not disparate can be accessed and joined through

13  the use of key values that the different databases share in common, Vasudevan's purported invention

14  operates without reliance on that previously-known method to tackle the novel challenge of

15  accessing "disparate [] databases."

16      "[A] patent can be held invalid for failure to meet the written description requirement, based

17  solely on the language of the patent specification."  *Univ. of Rochester v. G.D. Searle & Co.*, 358

18  F.3d 916, 927 (Fed. Cir. 2004).  Nonetheless, to contest TIBCO's conclusion, VSi offers the opinion

19  of its technical expert, Dr. Cardenas, that Figures 1, 4, 6, and 8 and their accompanying text describe

20  how the alleged invention accesses and retrieves data from "disparate [] databases."  Dr. Cardenas

21  believes these passages show that Vasudevan had possession of the claimed invention at the time of

22  the filing of the provisional application.  The conclusory expert opinion provided by VSi is not

23  sufficient to create a material question of fact for trial, because it remains undisputed that Vasudevan

24  amended his patent application to "claim[] a distinct invention from that disclosed in the

25  specification" of the provisional application.  *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565,

26  1572 (Fed. Cir. 1997) (affirming the district court's grant of invalidity "by looking solely at the

27  applications themselves" and disregarding patentee's expert declaration because "each application in

28  the chain must describe the claimed features"); *see also Trans Video Elecs, Ltd. V. Sony Elecs., Inc.*,

United States District Court

For the Northern District of California

1   822 F. Supp. 2d 1020 (N.D. Cal. 2011) (disregarding expert testimony on written description that

2   "essentially contradicts" the claim construction).  There is no question of material fact as to whether

3   the written description of the databases features would reasonably convey to those skilled in the art

4   that Vasudevan had possession of that aspect as of the filing date of the provisional application.

5   TIBCO's motion for summary judgment on this issue must, therefore, be granted.

6
        F.  Invalidity Due to Lack of Enablement of the "Disparate [] Databases" Features

7

8       TIBCO next argues that the '864 patent is invalid due to its failure to teach those skilled in

9   the art how to make and use the full scope of the claimed invention's "disparate [] databases"

10  features without undue experimentation, as evidenced by Vasudevan's own failure to enable those

11  limitations without undue experimentation.  Again, TIBCO takes the position that it is unnecessary

12  to apply the *Wands* factors because the patent lacks sufficient written disclosure of the "disparate []

13  databases" limitations. *See Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d

14  1190, 1195-98 (Fed. Cir. 1999); *Genentech*, 108 F.3d at 1366.  As discussed above, however, VSi

15  has raised at least a material question of fact as to whether the written description of the "disparate []

16  databases" limitations are sufficient.  Accordingly, the *Wands* factors are again weighed below to

17  determine whether that claim language is sufficiently enabled.

18      VSi admits that the period of Vasudevan's experimentation lasted from at least the fall of

19  2001 through the fall of 2003.  It argues, however, that Vasudevan spent less than one year of his

20  time during this period working to enable the "disparate [] databases" features, and that his

21  additional work during the period related to other features or products.  VSi describes Vasudevan's

22  experimentation as necessary to overcome the deficiencies in existing products such as Jasmine ii

23  and Versant.  It contends that during the period of experimentation, 90% of Vasudevan's efforts

24  were directed to the MIDaS product as a whole, and approximately 50% of his MIDaS efforts were

25  focused on the "disparate [] databases" features in particular.  Vasudevan provided a declaration

26  stating that from late 2001 through 2003, he worked 60-80 hours per week.

27      Relying on Vasudevan's own representations, TIBCO calculates that he spent between 3,159

28  and 4,212 hours just to reduce the "disparate databases" limitation to practice. TIBCO argues that

United States District Court

For the Northern District of California

this amount of experimentation is undue, representing between one and a half and two years of labor.

VSI does not quibble with TIBCO's math, but describes the number of hours worked as the

equivalent of only one year of experimentation.  Working at an aggressive pace of fifty hours a week

during fifty weeks of a year still only amounts to 2,500 hours of work during that period, far below

the minimum of 3,159 hour of work that Vasudevan concedes having spent experimenting to enable

the "disparate [] databases" features.  A more reasonable pace of forty hours a week for fifty weeks

of the year would result in 2,000 hours of work.  At that pace, Vasudevan's own calculations lead to

the conclusion that enabling the "disparate [] databases" features would require a person of ordinary

skill in the art to experiment for eighteen to twenty-five months to enable the features.  This

extended period of experimentation weighs heavily in favor of a finding of invalidity.

The amount of guidance provided is a factor closely related to the issue of whether the patent

contains an adequate written description, as discussed above.  The parties hotly dispute the amount

of guidance provided by the specification for enabling the invention, raising many of the same

arguments advanced with respect to the adequacy of the patent's written description.  TIBCO

describes the patent's guidance as minimal, arguing that the only mention of "disparate databases" in

the specification states that although prior-art systems "can perform complex collation and

correlation of data derived from a large and disparate set of databases, the databases have to be pre-

configured at the design-time of the information systems."  The specification identifies "key

parameters" as the "solution" to this issue, but TIBCO argues that it provides no guidance on how to

devise such a "parameter."  VSi, by contrast, describes the specification as providing paragraph after

paragraph of enabling description, including figures that demonstrate how to connect to disparate

databases and to assemble an OLAP cube from the retrieved data.  In particular, VSi's technical

expert, Dr. Cardenas, opines that the invention is enabled by disclosure of a serialized file and

correlation parameters.  TIBCO dismisses this testimony as an expert's impermissible attempt to

"rewrite" the specification in an effort to create a genuine issue of fact.  *See Default Proof Credit*

*Card Sys. Inc. v. Home Depot USA, Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("[patent holder]

cannot use the declaration of its expert to rewrite the patent's specification.").

United States District Court
For the Northern District of California

TIBCO raises an additional argument regarding the guidance provided by the patent that is persuasive. It points out that, in certain respects, the specification teaches away from a working embodiment. TIBCO notes, and VSi does not dispute, that a number of figures in the patent are screenshots from software that does not and cannot practice the claimed invention. Moreover, the specification describes the preferred embodiment of the invention as being implemented through the use of the Jasmine database. Vasudevan, however, testified that despite his best efforts, he could not implement the invention using that particular database, as the specification instructs. Rather than teaching how to make the invention, the specification teaches away from a working embodiment; evidence that the specification does not enable the invention. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1379 (Fed. Cir. 2007).

VSi concedes that Vasudevan lacked a working example of the invention at the time the provisional application was filed, but argues that the law does not require reduction to practice prior to filing. *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 61-62 (1998). Nonetheless, this factor too weighs against enablement.

The nature of the invention also weighs against enablement as VSi's own expert testified that the problem solved by the invention confounded inventors for 20 years, just as the creation of an OLAP cube from "disparate [] databases" was unknown previously. As to the next factor, state of the prior art, VSi contends that it included both OLAP and federation technology, and that its patent merely combines them in a novel way. Accordingly, VSi insists that one of ordinary skill in the art would be able to rely on his or her knowledge of the advanced state of the prior art to enable the invention without undue experimentation. The testimony of VSi's own expert, Dr. Cardenas, that "there was no teaching to perform OLAP using a federated database" at the time of the invention, undermines this position. Both Vasudevan and Dr. Cardenas testified that they knew of others who had tried and failed to implement the invention prior to the filing of the provisional application, including well-established computer software company, Computer Associates. This failure of others to practice the alleged invention even in light of the state of the prior art weighs against enablement.

VSi's technical expert, Dr. Cardenas, describes the relative skill of those in the art as high, having at least a bachelor's degree in computer science or engineering with an emphasis on

United States District Court
For the Northern District of California

computer programming or information technology, a few years of work experience, and familiarity with OLAP techniques.  TIBCO disagrees with Dr. Cardenas's characterization of the relative skill of those in the art as being relatively high.  Dr. Cardenas opines that a person with only a bachelor's degree could qualify as a person of ordinary skill in the art if they also had additional work experience and familiarity with OLAP techniques.  As previously discussed, his definition also includes those who have a Ph.D. degree in computer science or a Ph.D. in science or engineering with emphasis on computer programming or information technology along with some experience with database research, design or administration and familiarity with OLAP techniques.  Thus, the relative skill of those in the art is high.  It is also worth noting that Dr. Cardenas describes Vasudevan as a person of extraordinary skill in the art, yet it admittedly took Vasudevan at least three thousand hours of experimentation to reduce the alleged invention to practice.  Presumably, the experimentation required of one of merely ordinary skill in the art to achieve the same results would be even greater.

Predictability of the art favors enablement because, as VSi posits, the invention is in the software filed, which is a predicable art with well-developed computer languages.  Coding in such languages would be within the ken of the person of ordinary skill in the art.  Furthermore, database technologies have existed for many years.  Although TIBCO points to Vadudevan's own inability to predict which third-party tools could be used to implement the invention to argue that the art is unpredictable, this argument is properly directed to the amount of experimentation required.  It is not a commentary on the state of computer science or software as a field, which has reached a level of predictability.

VSi describes the claims as "drawn to a niche area in OLAP technology" and therefore favoring enablement.  TIBCO characterizes the claims as broad because they encompass every method of accessing incompatible or disparate databases to generate OLAP cubes, rather than one specific method.  It notes that VSi has only identified one enablement of its "disparate [] database" features, involving correlation parameters and serialized files.  Enablement, however, must be commensurate with the scope of the patent claim.  *Nati'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999).  "The scope of the claims must be

United States District Court

For the Northern District of California

1   less than or equal to the scope of the enablement." *Id.* at 1196. Here, because the relative breadth of

2   the claims is greater than the scope of the enablement, and they fail to explain how the patent's

3   disclosures could be used to generate OLAP cubes from the wide variety of databases VSi claims are

4   disparate, this factor weighs against enablement.

5       Overall, the *Wands* factors weigh heavily in favor of invalidity due to lack of enablement.

6   While the burden of proving invalidity by clear and convincing evidence is high, TIBCO has met it in

7   this instance. It is undisputed that at the time Vasudevan filed the provisional application, he was not

8   in possession of a working example of the "disparate [] databases" features it claimed. The

9   specification of that provisional application included screen shots from software that could not be

10  used to practice the alleged invention, thereby teaching away from enablement. Moreover, it took

11  Vasudevan, whose own expert described him as one of extraordinary skill in the art, more than three

12  calendar years to enable those features. During that period of experimentation, Vasudevan's own

13  declaration undisputedly establishes that he spent a minimum of 3,159 and as many as 4,212 hours

14  working to reduce the "disparate [] databases" limitations to practice. TIBCO's motion for summary

15  judgment of invalidity of the '864 patent must therefore be granted due to lack of enablement

16  regarding the "disparate [] databases" features.

17                                    V.      CONCLUSION

18      VSi has alleged that TIBCO's accused products infringe upon independent claim 26 of the

19  '864 patent. In that invalidity due to lack of written description and lack of enablement infects this

20  sole asserted independent claim, the effect of this order is that summary judgment of invalidity is

21  entered in favor of TIBCO and against VSi.

22      IT IS SO ORDERED.

23

24  Dated: 10/17/13                                _____

25                                                RICHARD SEEBORG
                                                  UNITED STATES DISTRICT JUDGE

26

27

28